78 13
127 185
61a 475

78 13
129 204

78 13
133 198
66a 51

78 13
88a 278

78 13
95a 412

THE FIRST NATIONAL BANK OF BURLINGTON, *Plaintiff in Error*, v. HATCH.

1. **Bill of Exchange**: PRESENTMENT FOR ACCEPTANCE: PLEADING. The petition in an action by the indorsee against an indorser of a bill of exchange alleged that the bill was presented to the drawee "for acceptance, and was by him then and there declined and refused acceptance, and not accepted." *Held*, that this was a sufficient averment of a demand of acceptance.

2. ——: ——. To make a valid presentment of a bill of exchange

for acceptance, it is not necessary that the notary should actually produce the bill; it is sufficient if he has it with him ready to produce in case the drawee calls for it.

3. ———: NOTARY'S CERTIFICATE. The certificate of a notary under seal, under the law merchant, was evidence of presentment, refusal and protest; and it is so recognized by our statute, (Wag. Stat., 218, ₰ 20). When it also recites notice of dishonor to the parties, the statute makes it evidence of notice as well as of dishonor, provided it is verified. Wag. Stat., p. 598, ₰ 50.

4. ———. Notice of dishonor need not be in writing, and is not necessarily given by a notary. The holder of the paper may give it. No particular form of words is necessary.

5. ———: PLEADING AND PROOF. When the plaintiff in his petition alleges presentment and notice of dishonor, he cannot prove waiver of such conditions in the absence of proper averments of a waiver.

6. ———: NOTICE. Where the indorsers are successive and not co-sureties, proper notice to any one of them is sufficient to hold him·

*Error to Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Shanklin, Low & McDougal* for plaintiff in error.

The notice of presentment and protest was sufficient. It was not necessary that the notice should be in writing. Story on Bills of Exchange, (3 Ed.) p. 367, § 300 ; 2 Daniel Negotiable Inst., (2 Ed.) p. 30, § 972 ; *Glasgow v. Pratte,* 8 Mo. 336; *Linville v. Welch,* 29 Mo. 203. After the bill was presented and protested for non-acceptance, the promise of defendant to pay it, with a knowledge of all the facts, such promise to pay is a waiver of all informalities as to giving notice. Story on Bills, (2 Ed.) p. 332, §§ 280, 320, 373; 2 Daniel Neg. Inst., § 1147; *Harness v. Daviess Co. Savings Ass'n,* 46 Mo. 357; *Salisbury v. Renick,* 44 Mo. 554; *Clayton v. Phipps,* 14 Mo. 399; *Dorsey v. Watson,* 14 Mo. 59 ; *Wilson v. Huston,* 13 Mo. 146; *Mense v. Osbern,* 5 Mo. 544; *Sigerson v. Mathews,* 20 How. 498; *Thornton v. Wynn,* 12

Wheat. 184; *Reynolds v. Douglass,* 12 Pet. 497 ; *Faulkner v. Faulkner,* 73 Mo. 327.

*W. C. Samuel* and *George W. Warder* for defendant in error.

Allegation of demand for acceptance and certificate of presentment for acceptance insufficient.   Daniel Neg. Inst., §§ 462, 654, 950, 953; Edwards Bills, (2 Ed.) top p. 477; *Musson v. Lake,* 4 How. 262; *Smith v. Gibbs,* 10 Miss. (2 Sm. & Mar.) 479 ; *Fall River Bank v. Willard,* 5 Met. 216 ; *Mitchell v. DeGrand,* 1 Mason (U. S. C. C.) 176 ; *Price v. McClare,* 3 Abb. Pr. 253; *Robinson v. Johnson,* 1 Mo. 435 ; *Draper v. Clemens,* 4 Mo. 52 ; *Nave v. Richardson,* 36 Mo. 133 ; Chitty on Bills, 260 note; Ib., 402.   The drawee cannot waive due diligence in presentment.   *Pierce v. Whiting,* 29 Me. 188 ; *Ex parte Bigold,* 2 Mont. & A. 633 ; *Lee Bank v. Spencer,* 6 Met. 308; Dan. Neg. Inst., § 1109; *May v. Boisseau,* 8 Leigh 164 ; *Posey v. Decatur Bank,* 12 Ala. 815. Evidence of waiver of notice must be pleaded.   *Lumbert v. Palmer,* 29 Iowa 104; *Cole v. Wintercost,* 12 Texas 118; *Garvey v. Fowler,* 2 Sand. 665; *Shultz v. Dupuy,* 3 Abb. Pr. 252 ; *Pier v. Heinrichoffen,* 52 Mo. 333; *Hall v. Davis,* 41 Ga. 614 ; *Burgh v. Legge,* 5 Mees. & W. 418 ; Edwards Bills, *636.   Promise to pay must be made after full knowledge of the facts showing him not legally bound to pay.   *Dorsey v. Watson,* 14 Mo. 59 ; *Clayton v. Phipps,* 14 Mo. 399 ; *Salisbury v. Renick,* 44 Mo. 554; *Arnold v. Dresser,* 90 Mass. (8 Allen) 436 ; *Low v. Howard,* 11 Cush. 268; *Kelley v. Brown,* 5 Gray 108; *Ballin v. Betcke,* 11 Iowa 204; *Ault v. Sloan,* 4 Iowa 504; 2 Greenleaf Ev., (Red. Ed.) § 190, and cases cited, n. 1 ; *Bank v. Baldwin,* 17 N. J. L. 487; *Edwards v. Tandy,* 36 N. H. 540 ; *Freeman v. O'Brien,* 38 Iowa 406; *Lilly v. Petteway,* 73 N. C. 358 ; *Campbell v. Barney,* 11 Iowa 43; *Trimble v. Thorn,* 16 Johns. 152.   Promise must be explicit and unequivocal.   *Tardy v. Boyd,* 26 Gratt. 631; *Allen v. Harrah,* 30 Iowa 363; *Creamer v. Perry,* 17 Pick. 332 ; *Thornton v. Wynn,* 12 Wheat. 183 ; Story on

Bills, § 321. Notice of dishonor should be sent on the day after protest. 1 Parsons Notes and Bills, 511, note 1; 3 Kent, (12 Ed.) 106, note d; *Bank v. Orris*, 40 Iowa 332; *Grant v. Strutzel*, 6 N. W. Rep. 119; *Griffith v. Assmann*, 48 Mo. 66; *Bank v. Taylor*, 34 N. Y. 128, and cases cited. Want of funds by drawee does not excuse presentment as against the indorser. *Ramdulollday v. Darieux*, 4 Wash. C. C. 61; *Ralston v. Bullits*, 3 Bibb 261; *Scarborough v. Harris*, 1 Bay 178. Notice must come from one entitled to demand payment. Parsons Neg. Inst., §§ 972, 1083; *Juniata Bank v. Hale*, 16 S. & R. 157; *Magruder v. Union Bank*, 3 Pet. (U. S.) 87; *Staunton v. Blossom*, 14 Mass. 116.

MARTIN, C.—The plaintiff brought suit on the 14th day of September, 1878, against the defendant as the indorser of a foreign bill of exchange drawn on the 25th day of May, 1873, by the Burlington & Southwestern Railway Company on Elijah Smith, the financial agent of the company at Boston, payable, in the sum of $5,000, forty days after date. The bill was indorsed by the defendant to the plaintiff, for the sum of $5,000, which was paid at the time of the indorsement and delivery to plaintiff. The petition is in the usual form describing the making, indorsement and delivery of the bill before maturity. The petition contains the averment that "said bill of exchange was subsequently, on the 30th day of May, 1873, presented to the said Elijah Smith at his office in the Sears building in Boston, Massachusetts, for acceptance, and was by him then and there declined and refused acceptance and not accepted, and said bill of exchange was, on that day, duly protested for non-acceptance, of all which said defendant Henry Hatch had due notice." The answer consisted of a general denial. The case was tried by the court without a jury.

The plaintiff submitted in evidence the bill of exchange and the indorsements thereon, and the certificate of the notary relating to the dishonor of the paper and notice of

that fact to the defendant. The certificate of the notary in Boston under his hand and seal, was as follows: "On this 30th day of May, in the year of our Lord, 1873, I, Albert W. Adams, notary public, duly commissioned and sworn, in and for the county of Suffolk, and practicing in the city of Boston, at the request of C. F. Smith, Esq., cashier of the Continental National Bank of Boston, went with the original bill, a copy of which is hereto annexed, within the time therein limited, and demanded acceptance thereof of the drawee, at his office in Sears building, and he answered, 'I decline accepting.' The bill remaining unpaid, I duly and officially notified the last indorser by a written notice sent him by mail to First National Bank, Burlington, Iowa, enclosing like notices to each of the other parties to said bill, (postage prepaid) in each of said notices requiring payment. Wherefore, I, the said notary, by request as aforesaid, have protested, and by these presents do solemnly protest against the drawer of said bill, and all others concerned therein, for exchange, re-exchange and all costs, charges, damages and interest suffered and sustained, or to be suffered and sustained by reason or in consequence of non-payment thereof."

The record recites that this certificate was, on objection of defendant, excluded as evidence of notice of protest, but was read as evidence of protest for non-acceptance.

Lyman Cook, president of plaintiff, testified among other things, that defendant was at the bank two or three times a week; that he kept his account there, and witness talked with him about the draft; that immediately after the protest witness went down to defendant's office and payment was promised, and defendant admitted his liability.

Q. What protest was it you notified Mr. Hatch and the rest of the indorsers of? A. When the notary first protested the draft. I don't know as it was protested but once. I think there was but one protest about it. I forget whether it was at sight or not. I notified them of the first protest that came.

2—78

Q. How soon after you received the notice of the protest for non-acceptance did you have a talk with Mr. Hatch? A. I couldn't say now, but I think the same day; that is my impression; that I saw him the same day that we got the notice. I didn't take the notice down to him, but saw him and said to him the draft was protested; and I think they knew it before I got there. It was my impression they had a notice with them.

Mr. Lauman testified to conversations with defendant tending to establish an acknowledgment of his liability after the protest.

The defendant was called by the plaintiff, and testified: " I don't know that I ever received any notice of the dishonor of this draft. I do not remember now whether I did or not; and can't say." He testified that he was in the plaintiff's bank nearly every day and talked with the president and cashier about the draft. He continues: " I cannot say that they notified me that it had been protested for non-acceptance; but they talked with me about it, and we knew it had not been accepted, and Smith would not pay it. They might have told me it had been presented and not accepted, and protested, about the time it occurred, but I do not now remember. I should not think it strange if I did receive notice of protest for non-acceptance, because I received so many notices of failure to accept about the time of Smith's failure, but can't say positively as to this bill." Again, " Mr. Elijah Smith having failed, notices of protest rained all around." He testified that he expected the draft would be paid when it was drawn and indorsed, but that he knew it would be dishonored before it was protested; that he had heard of Smith's failure, and that Smith had telegraphed him that he would accept no more bills.

The defendant offered no evidence. The case was submitted and taken under advisement, the plaintiff having asked the court to give the following declarations of law:

1. If the court, sitting as a jury, believes from the evidence that Henry Hatch, the defendant, indorsed the

draft in suit, and that the same was presented by the holder thereof for acceptance, and that acceptance was refused, and that it was duly protested for non-acceptance, and that notice of such presentment and protest thereof was given to said Hatch by plaintiff or the president or cashier thereof within a reasonable time thereafter, the court must find for the plaintiff.

2. To fix the liability of defendant, it is not absolutely necessary that he should have written notice of the presentment and protest of the draft in suit. It is sufficient if he has had verbal notice thereof from plaintiff or its officers; therefore, if the court finds from the evidence that defendant had verbal notice from the plaintiff or its officer, within a reasonable time after the presentment and protest of said draft for non-acceptance, the court sitting as a jury ought to find for the plaintiff.

3. If the defendant had either written or verbal notice of the presentment and protest of the draft in suit for non-acceptance, the finding ought to be for the plaintiff.

4. If defendant acknowledged his liability to plaintiff after the presentment and protest of said draft, such acknowledgment of liability is a waiver of notice of protest for non-acceptance.

5. The possession of the draft by plaintiff is *prima facie* evidence that plaintiff is the holder for value and the owner thereof.

These declarations were all refused by the court, and judgment was rendered for the defendant, who asked no instructions. The grounds upon which the court was persuaded to render this judgment may reasonably be presumed to be the same which are submitted to us by the defendant for the purpose of sustaining it, and which I will now briefly consider.

I. It is contended by defendant that the petition fails to contain any averment of demand of acceptance of the draft, and that consequently no proof of such fact can be noticed by the court in deciding the issues before it. I

think the learned counsel for the defendant are mistaken in their construction of the petition. The averment that the bill of exchange "was presented to the said Elijah Smith at his office in the Sears building in Boston, Massachusetts, for acceptance, and was by him then and there declined and refused acceptance, and not accepted," contain, under every fair intendment, the necessary and material implication that acceptance was requested, when presentment was made. How could it be presented for acceptance to the drawee without conveying to him the necessary information that acceptance was wanted and requested at the time of the presentment; and how could he decline and refuse acceptance at that time, if the presentment for acceptance did not in fact convey to him the wish and request to do the thing he declined and refused to do? The term "demand" is not as appropriate in its application to the presentment of a bill for acceptance as it is when presented for payment after acceptance. The drawee not having accepted, is under no obligations whatever to the holder of the paper. The attitude which the holder bears to a drawee who has not accepted, hardly justifies the use of the term "demand," and in pleading other averments are more commonly used such as "request," which implies perhaps the same thing, but with a courtesy more in accord with the attitude of the holder.

The allegations in this petition are in strict conformity with the forms which have been in use in England for about fifty years, having been adopted by rule of court. In the first American edition of Mr. Chitty's work on Bills, published in 1834, his form of a declaration by an indorsee against the indorser of a bill of exchange for non·acceptance, after reciting the execution, indorsement and delivery of the bill to plaintiff, continued as follows : "And the same was then and there presented to the said G. H. for acceptance, and the said G. H. then and there refused to accept the same, of all which the defendant then and there had due notice." Chitty on Bills, (1 Am. Ed.) 82; Chitty on

Bills, (12 Am. Ed.) 626. I will remark in passing, that this form of Chitty's, used by the plaintiff in this case, is identical with the form which will be found included in our statutes from 1855 down to the present time. 2 R. S. 1855, p. 1618; Gen. St. 1865, pp. 921, 922; 1 R. S. 1879, p. 702. It is perhaps unnecessary to allude to this for the purpose of adding anything to the worth and accuracy of Chitty's forms; while I must be pardoned for maintaining that the fact of the adoption and approval by our revisers for nearly thirty years, certainly ought not to detract from the value of the forms furnished by that distinguished pleader.

The cases cited by the counsel for defendant in support of their position do not relate to the sufficiency of pleadings, but to the sufficiency and fullness of proofs—another subject entirely.

II. The conclusion we have reached about the sufficiency of the pleading in respect of demand for acceptance, disposes of the objection of defendant to a want of proof on this point. The objection is not that there was no recital of demand in the certificate, but that in legal contemplation, there was no proof in the case, because there was no allegation of demand in the petition.

III. The notarial certificate recites that the notary "went with the original bill  *  *  and demanded acceptance thereof of the drawee,  *  *  and he answered, ' I decline accepting.'" The counsel for defendant, in a brief of great learning and ability, contend that this notarial certificate is defective in failing to state that the bill was exhibited or produced when acceptance was requested. I do not propose to review the many authorities submitted by them in support of this proposition. I have examined them, and will state the reasons why I cannot regard them as impeaching the validity of the certificate. 1st, Nearly all of them relate to presentment for payment and not for acceptance. "The duty of a holder in presenting a draft for acceptance manifestly is not governed by rules or rather circumstances so urgent as those that attend the presentment

and demand for payment." 2 Edwards Bills and Notes, (3 Ed.) § 693; Story on Bills, (4 Ed.) § 350. 2nd, In none of the cases pressed upon our attention does it appear affirmatively or expressly in the certificate or proofs, that the presenting party had the bill in his possession at the time he demanded payment or acceptance. A statement of such a material fact must necessarily give a more significant meaning to the recitals of what he did when he repaired to the drawee with the bill, of which he says he then and there demanded acceptance. 3rd, The fact that he had the bill in his actual possession implies that he was prepared to discharge in the presence of the drawee all the strict formalities of presentment and demand. He was able to leave it with the drawee for inspection if he so requested, or expressed any doubts as to its genuineness. Under these circumstances there could be nothing fictitious in his demand and presentment, and the law does not require a physical exhibition of the bill, if the drawee, well knowing the character of the bill, refuses to accept and does not ask to see the bill. Edwards says : " The person presenting the bill for acceptance should have it in his actual possession, and should exhibit it to the drawee with a request for its acceptance; but this is not absolutely necessary ; if the drawee does not ask the production of the bill and refuses to accept, the drawers and indorsers may be charged by protest and notice in the same manner as if the refusal had been made after actual sight." 1 Edwards Bills and Notes, (3 Ed.) § 558; 2 Daniel Neg. Inst., § 462; *Fisher v. Beckwith*, 19 Vt. 31; *Bank of Virginia v. Cameron*, 7 Barb. 143. A presentment in this manner is good as a presentment, and it is not regarded as a waiver of presentment.

IV. The certificate of the notary, being under seal, was evidence of presentment, refusal and protest. Such was its import under the law merchant, and it is so recognized in this state by statutory enactment. 2 Wag. Stat. 1872, p. 218. When the certificate also recites notice of dishonor to the parties, it is evidence of that fact as well as the fact of

dishonor, when verified by the notary. 2 Wag. Stat. 1872, p. 598. In this case the certificate not being verified, was not evidence of notice of dishonor, and the court was right in ruling it as insufficient for that purpose.

V. Notice of dishonor is not required to be in writing. *Linville v. Welch*, 29 Mo. 203. Neither does it, under the law merchant, belong exclusively to the duties of the notary The owner or holder of the paper is the proper person to give it.

The court erred in refusing the first, second and fifth declarations of law asked by plaintiff. They are correct, and there was abundance of evidence to justify and support a finding for plaintiff on the issue of notice had by defendant of the dishonor of the draft. The president of the bank testified that he notified the indorsers of the first protest that came; that he told the defendant the same day the notice came, that the draft was protested. This is repeated in his testimony. This communication must have been made immediately after the protest. The defendant's admission to the effect that "they might have told me it had been presented and not accepted and protested, about the time it occurred, but I do not now remember," goes strongly to support the receipt of notice, especially when taken in connection with his admission of liability. Again he says, "I should not think it strange if I did receive notice of protest for non-acceptance." I think the evidence is pretty convincing that when the shower of notices took place on the failure of the drawee, one of them must have fallen on the defendant; also that he received verbal notice from the president and cashier of the plaintiff.

No particular form of words is necessary in the notice. A notice to the indorser that the bill has been protested for non-acceptance is sufficient. This implies dishonor. *Mills v. Bank U. S.*, 11 Wheat. 431. Notice of "protest" of a bill of exchange in common acceptance implies presentment and dishonor. 2 Daniel Neg. Inst., § 983 ; 2 Edwards Bills and Notes, (3 Ed.) § 806.

VI. The instruction of plaintiff relating to a waiver of presentment and notice of dishonor, was properly refused. When the plaintiff, in his petition, alleges presentment and notice of dishonor, he is not permitted, under our Practice Act, to prove that the defendant waived such conditions, in the absence of proper averments of a waiver. *Pier v. Hein-richoffen,* 52 Mo. 333; 2 Edwards Bills and Notes, (3 Ed.) § 949.

The position of the indorsers on this bill indicates that they were successive and not co-sureties. A proper notice, therefore, to any one of them, is sufficient to hold him. *Stix v. Mathews,* 63 Mo. 371.

For the reasons I have given the judgment of the circuit court is reversed and the case is remanded for re-trial. PHILIPS, C., concurs; WINSLOW, C., absent.