PEOPLE'S BANK OF NEW ORLEANS V. SCALZO, *Executrix, et al., Appellants.*

### Division Two, March 5, 1895.

1. **Note:** INDORSEMENT: AUTHORITY OF AGENT. Whether one acted within his authority in indorsing the note for his nonresident principal so as to comply with Revised Louisiana Civil Code, section 2997, requiring power to indorse a note to be express and special, considered and *held*, that he acted within his authority.

2. **Evidence:** GENERAL OBJECTIONS. The general objection of the incompetency of the evidence is sufficient only when such evidence is inadmissible for any purpose.

3. ———: ———: NOTARY: CERTIFICATE OF PROTEST. The objection that a notary's certificate of protest is not verified by his oath, as required by Revised Statutes, 1889, section 4880, should be specifically made in the trial court; otherwise its admission will not be reviewed on appeal.

4. **Note:** INDORSEMENT: NOTICE OF PROTEST. Where it appears that the indorser resided in a certain city when the note was protested, and the notary's certificate of protest showed that notice of protest, addressed to the indorser at such city, was mailed, and there was no evidence that he did not receive notice, the fact that he did receive it could be properly inferred.

5. ———: ———: ———. Where the indorser signed his name on the note with the addition of the words "and company," and there was no such firm, and a notice of protest directed to such firm at the city in which the indorser resided was mailed, and no other person of the indorser's name lived there, and there was no evidence that the indorser did not receive the notice, a finding that he did receive it was justifiable.

6. Pleading: DEFECTIVE PETITION: AIDER BY VERDICT. If a material allegation be not expressly averred in the petition, but the same is necessarily implied from what is stated, the defect is cured by the verdict, the presumption being that plaintiff proved the fact imperfectly alleged, the existence of which was necessary to a recovery.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*Dickson & Smith* for appellants.

(1) The court below erred in refusing to give instruction, in the nature of a demurrer to the evidence, asked by appellants at the close of the case. *Boykin v. O'Hara*, 6 La. Ann. 115; *Brown v. Frantrum*, 6 La. Ann. 39; *Bank v. Hart*, 32 La. Ann. 22; *Reynolds v. Rawley*, 4 La. Ann. 396; *Bank v. Schamberg*, 32 Mo. 228; Daniel on Neg. Inst. [4 Ed.], sec. 283; sec. 2997, La. Civil Code, 1891; *Chaffee v. Stubbs*, 37 La. Ann. 656; Randolph on Com. Paper, secs. 386, 388, 399, 421. (2) The court below erred in the admission of the notes sued on, as proper authority in law for the indorsement had not been shown. Civil Code La. 1891, sec. 2997; *Boykin v. O'Hara*, 6 La. Ann. 115; *Brown v. Frantrum*, 6 La. Ann. 39; *Bank v. Schaumberg*, 32 Mo. 228; *Bank v. Gay*, 63 Mo. 33; Daniel on Neg. Inst. [4 Ed.], sec. 283; Tiedeman on Com. Paper, sec. 82; Randolph on Com. Paper, sec. 357. (3) The court below erred in admitting in evidence the certificates of notarial protest. *Faulkner v. Faulkner*, 73 Mo. 327; R. S. 1889, sec. 4880. (4) The court below erred in finding that proper presentment, demand, and protest were made, and notice thereof given Vincenzo Scalzo. *Ins. Co. v. Wilson*, 2 S. E. Rep. 888; Daniel on Neg. Inst., secs. 962, 998, 1050, 1116; Story on Prom. Notes [7 Ed.], secs. 309, 345;

*Clay v. Oakley*, 17 Mart. (La.) 137; *Bird v. Doyal*, 20 La. Ann. 541; *Montillet v. Duncan*, 11 Mart. (La.) 534; *Bank v. Ellery*, 4 Mart. (N. S.) 87. (5) The court below erred in its finding that Zammit had "express and special" power, within the meaning of article 2997 of the Louisiana Civil Code, to make the indorsement of the notes sued on, and that such indorsement is sufficient to hold the estate of Vincenzo Scalzo. Same authorities as under point 2.

*Campbell & Ryan* for respondent.

(1) The power of attorney from V. Scalzo & Company to Philip Zammit was amply sufficient, both under the general law respecting such instruments and under the civil code of Louisiana, to authorize the indorsement of the notes in suit. *Bank v. Morgan*, 2 La. Ann. 418; *Bank v. Hagan*, 2 La. Ann. 999; *Bank v. Hernandez*, 25 La. Ann. 43; *State v. Tax Collector*, 40 La. Ann. 232; *State ex rel. v. Gates*, 67 Mo. 139; *Edwards v. Thomas*, 66 Mo. 468; *Bank v. Studley*, 1 Mo. App. 260. (2) The intention of the parties as to the extent of authority meant to be given will influence the court in construing the instrument. *Mathews v. Danahy*, 26 Mo. App. 660; Mechem on Agency, sec. 295. (3) Effect must be given to every word and clause, etc., and if the instrument is open to two constructions, the one that upholds the contract should govern. Mechem, secs. 303, 404. (4) While an authority to give a bill or note may not include accommodation paper, yet if such be given by the agent with the principal's consent, and to take up other similar paper upon which he was liable, he will be bound. 1 Randolph on Com. Paper, sec. 361; *Bank v. Studler*, 1 Mo. App. 260. (5) The verbal direction given by Scalzo to Zammit in New Orleans before the maturity

of the $15,000 note to attend to such renewal as might be necessary, and indorse on his behalf, was an express and special authority to indorse the notes in suit within the meaning of article 2997 of the civil code of Louisiana. Cases cited *supra*. (6) The telegram sent by Scalzo to Zammit: "Do the best you can," in response to Zammit's telegram that the note would be due next day, and inquiring what he should do, constituted, under the civil code of Louisiana, express and special authority to Zammit to indorse these notes. Cases *supra*. (7) Even had there been no previous authority to Zammit to indorse these notes the subsequent circumstances would constitute a ratification of Zammit's act in so doing. Mechem on Agency, secs. 153, 164, 178, 705; *Johnson v. Carrere*, 45 La. Ann. 847; *Bank v. Gay*, 63 Mo. 33; *Peck v. Ritchey*, 66 Mo. 114; *Ferris v. Thaw*, 72 Mo. 446. (8) The fact that the first or $15,000 note was indorsed by Vincenzo Scalzo as V. Scalzo, Son & Company (of which firm he was a member), and that the two notes in suit were indorsed by Zammit (by authority of Scalzo), of which firm V. Scalzo was also a member, makes all the notes the obligation of V. Scalzo, upon which he could be held personally liable *in solido*, and the two notes in suit having been so indorsed by Vincenzo Scalzo in renewal of the balance due upon the accommodation indorsement of the $15,000 note, and the bank being the holder in good faith for value, the estate of Vincenzo Scalzo is liable for the amount due thereon. *Newman v. Goza*, 2 La. Ann. 642; *Knox v. Dickson's Heirs*, 4 La. Ann. 466; *Mathews v. Rutherford*, 7 La. Ann. 224; *Braux v. LeBlanc*, 10 La. Ann. 97; *Gasquet v. Oakey*, 15 La. Ann. 537; *Jones v. Byrne*, 16 La. Ann. 202; *Trabue v. Short*, 18 La. Ann. 257. (9) There was abundant evidence upon which the court was justified in its finding that the notices of protest were

received by both V. Scalzo and his agent, Zammit. Daniels on Negotiable Instruments [4 Ed.], secs. 1003, 1023–1029*a;* Edwards on Bills, sec. 812; *Tollian v. Dupre,* 11 Robinson, 454; *Carmena v. Bank,* 1 La. Ann. 369; *Dedoux v. Morgan,* 3 La. Ann. 344; *Bank v. Chambers,* 14 Mo. App. 152. (10) The recognition of liability by Scalzo several months after the maturity of the notes and his promise to Landry, president of plaintiff bank, that he would make the notes good, would have fixed his liability, had there been no protest. *Hyde v. Stone,* 20 Howard, 170; *Yaeyer v. Farwell,* 13 Wall. 7; *Hazard v. White,* 26 Ark. 280; *Carter v. Sprague,* 51 Cal. 239; *Fall v. Deal,* 14 S. C. 247; *Levy v. Peters,* 9 S. & R. 125; *Bank v. Lyman,* 20 Vert. 666; *Oglesby v. Steamboat,* 10 La. Ann. 117. (11) The objection to the petition is made here for the first time and is not well taken. An objection to the petition must go to the entire sufficiency of the petition to state a cause of action. It can not avail when it states a cause of action which is indefinite or imperfect in some of its averments. *McDermott v. Claas,* 104 Mo. 14. (12) Such objection for imperfectly stating a cause of action must be taken by demurrer or motion. *Bank v. Leyser,* 116 Mo. 61; *Lynch v. Railroad,* 111 Mo. 604; Bliss on Code Pl., sec. 438; R. S. 1889, sec. 2100; sec. 2113, clauses 8 and 9. (13) Appellants' objections to the protests are futile, not only because not well taken, but because they failed to make their objections specific in the trial court when the instruments were offered in evidence. The only objections made were that they were "incompetent, irrelevant and immaterial." The practice in this respect is well settled. *Jamison v. Baggot,* 106 Mo. 240; *Dunkman v. Railroad,* 95 Mo. 232; *Block v. Estes,* 92 Mo. 318; *Keim v. Railroad,* 90 Mo. 214.

GANTT, P. J.—This is an action against the personal representatives of Vincenzo Scalzo, deceased, to recover the principal and interest of two negotiable promissory notes, together with damages and costs of protest.

The two exhibits are as follows:

"$5,000.                NEW ORLEANS, July 6, 1891.

"Sixty days after date we promise to pay to the order of ourselves, five thousand $\frac{00}{100}$ dollars, at our office, No. 144 Decatur street;  value received.

"FLLI. CUSIMANO.

Per Chas. Adoue.

"Due 4—7, September, '91.

"(Indorsed)              FLLI. CUSIMANO,

"Pp. Chas. Adoue.

"V. SCALZO & Co.

"Pp. Ph. Zammit."

"5,000.                NEW ORLEANS, July 6, 1891.

"Seventy-five days after date we promise to pay to the order of ourselves, five thousand $\frac{00}{100}$ dollars, at our office, No. 144 Decatur street;  value received.

"FLLI. CUSIMANO,

"Per pro Chas. Adoue.

"Due 19—22, Sept., '91.

"(Indorsed)              FLLI. CUSIMANO,

"Per Chas. Adoue.

"V. SCALZO & Co.

"Pp. Ph. Zammit."

The first count of the petition is in these words:

"Plaintiff states that it is now, and, at the dates hereinafter mentioned, was, a corporation organized under the laws of the state of Louisiana, and domiciled and doing business in the city of New Orleans, in said state.

"That on and prior to the twenty-seventh day of March, 1890, the defendants, Felix Scalzo, Sylvester Rocco Fiorita and P. V. Rocco and Vincenzo Scalzo were commercial partners, doing business under the firm name of V. Scalzo & Company. That on the eighth day of January, 1892, Vincenzo Scalzo, one of the aforesaid partners in said firm, departed this life, and left a will, appointing the defendants, Sarah Scalzo and Sylvester Rocco Fiorita, executors of his said last will. That said will was probated, in the city of St. Louis, on the fifth day of January, 1892; that on the sixteenth day of January, 1892, letters testamentary were issued by the probate court of the city of St. Louis to the defendants, Sarah Scalzo and Sylvester Rocco Fiorita, as executrix and executor respectively of the last will of Vincenzo Scalzo, and they are now acting in the capacity of the executors of the estate of said Vincenzo Scalzo.

"And plaintiff states that said defendants are justly and truly indebted to it *in solido*, in the full sum of fifty-one hundred and sixty-two and 10-100 dollars for this, to wit:

"On the sixth day of July, 1891, Flli. Cusimano, a commercial firm in the city of New Orleans, and carrying on business under said firm name, otherwise known as Cusimano Brothers, made their certain nogotiable promissory note in writing, herewith filed and made part hereof, whereby, sixty days after date, they promised to pay to the order of themselves five thousand dollars ($5,000), at their office, No. 144 Decatur street; value received.

"That thereupon said Flli. Cusimano, otherwise known as Cusimano Brothers, indorsed and delivered said note to the aforesaid firm of V. Scalzo & Company, composed of aforesaid defendants and Vincenzo Scalzo, the testator hereinbefore mentioned, and thereupon

they, under their said firm name of V. Scalzo & Company, indorsed and delivered the same to the plaintiff who was and is the legal owner and holder thereof; that when the said note became due, according to its tenor and effect, the same was not paid, or any part thereof, although payment was duly demanded by plaintiff of said makers, whereupon the said note was duly and legally protested for nonpayment, of all which facts the said defendants, V. Scalzo & Company, then had due and lawful notice; that no part of said note, or the interest thereof, has since been paid, but that the whole remains due and payable to the plaintiff together with —— per cent. damages and interest thereon at the rate of five per cent. from September 7, 1891, together with $4.10 protest fees.

"Wherefore plaintiff asks judgment against the aforesaid defendants *in solido* for the full sum of fifty-one hundred and sixty-two and 10-100 dollars together with interest and costs."

The second count is in all respects similar, save in the description of the note declared on.

All the defendants named in the caption of the petition were duly served, except P. V. Rocco.

Those served filed an amended answer. The first two paragraphs is a general and specific denial of the allegations of the petition, save and except the death of Vincenzo Scalzo, and the appointment and qualification of his executors, and the probate of his will. The remaining two paragraphs of the answer are as follows:

"3. Defendants, for another and further defense to the causes of action in plaintiff's petition contained, aver that the promissory notes in said petition set forth were, at the time therein mentioned, made and executed by Flli. Cusimano, and by them indorsed, as in said petition alleged, in the city of New Orleans, and state of Louisiana. That by their terms said notes were made

payable to the order of said Flli. Cusimano, a firm then engaged in business in the said city of New Orleans, and state of Louisiana. That subsequent to the indorsement so made, as aforesaid, by said Flli. Cusimano, one Philip Zammit caused said notes to be indorsed in the name of V. Scalzo & Company for procuration of said Zammit, and thereafter said notes were delivered to plaintiff, at the said city of New Orleans, and state aforesaid. Defendants aver that said Vincenzo Scalzo was, at the time last aforesaid, a member of the firm of V. Scalzo & Company, engaged in business in the city of New Orleans, and state aforesaid; that said indorsement was made as aforesaid by said Zammit wholly without consideration, and solely for the accommodation of said Flli. Cusimano, and for their sole benefit, and was not made in the course of business of said firm of V. Scalzo & Company, or on its behalf, or for its benefit, or on behalf of any member of said firm, and was not made by the authority or consent of said firm of V. Scalzo & Company, or of said Vincenzo Scalzo, or of these defendants, or either of them. That under the laws of the state of Louisiana, the indorsement aforesaid made by said Zammit is and was an accommodation indorsement of the notes aforesaid. That said notes were issued by the said Flli. Cusimano to take up and discharge a certain promissory note for the principal sum of $15,000, then due and held by plaintiff, and to which last mentioned note so taken up and discharged by said two notes, neither said firm of V. Scalzo & Company, nor any member thereof, was a party as maker or indorser, or otherwise. Defendants further aver, that of all of the foregoing facts, plaintiff, at the time of the happening of the same, had full knowledge and notice. Wherefore, having fully answered, defendants pray to be hence dismissed with costs.

"4.   And for another and further defense to the causes of action in said petition set forth, defendants aver that the notes sued on herein were made and· indorsed by said Flli. Cusimano, as in said petition alleged, in the city of New Orleans, and state of Louisiana.   That subsequent to the indorsement last aforesaid, one Philip Zammit, acting solely for the accommodation of said Flli. Cusimano, then doing business in said city of New Orleans, and state aforesaid, caused each of the said notes to be indorsed as follows:   'V. Scalzo & Co., pp. Ph. Zammit.'   That subsequent to the said last indorsement, said notes were delivered to plaintiff, at its place of business, in the said city of New Orleans, and state aforesaid.   Defendants aver that under the laws of the said state of Louisiana, in force at the time of the making of the indorsement last aforesaid, to wit, under the terms and provisions of article 2997, of the Revised Civil Code of said state of Louisiana, it was provided, among other things, as follows:   'Thus the power must be express and special for the following purposes:   To draw or indorse bills of exchange or promissory notes.'   Defendants aver that said Zammit was never authorized by said firm of V. Scalzo & Company, or said Vincenzo Scalzo, or by any of these defendants, as required by the provisions aforesaid of said article 2997, or in any other manner, to indorse said promissory notes, or either of them, but that said indorsement was made by Zammit wholly without authority on the part of said Zammit from said firm of V. Scalzo & Company, or said Vincenzo Scalzo, or of these defendants, or either of them.   Wherefore, having fully answered, defendants pray to be hence dismissed with costs."

The defendants filed an affidavit denying the partnership.   The cause was thereafter dismissed as to Felix Scalzo, Sylvester Rocco Fiorita (personally) and

P. V. Rocco. A reply was duly filed to the new matter of the answer. A jury was waived and the cause was tried by the court.

Plaintiff's evidence tended to prove that prior to the making of the notes in suit Vincenzo Scalzo and Angelo Cusimano, the principal member of the firm of Cusimano Brothers, had been intimate friends and had indorsed each other's paper for accommodation. Vincenzo Scalzo was the senior member of the firm of V. Scalzo, Son & Company, of St. Louis, and also of the firm of Vincenzo Scalzo & Company, of New Orleans (this latter being in the same line of business in New Orleans and Florida as Cusimano Brothers), and he frequently visited that city, his partner in the firm there being Philip Zammit, a resident of New Orleans, and who had a power of attorney from V. Scalzo & Company, which was signed by V. Scalzo for the firm, and authorized him, Zammit, to transact certain business with the People's Bank of New Orleans, the respondent here, and, among other things, "to borrow money and contract obligations with the said institution in my name, whether on promissory notes or obligations drawn by me or by our said attorney in our name, or by other parties in our favor, or in favor of any other person or persons, or on a pledge of the same, or of any property to secure the payment thereof, without limit to the amount; and from time to time to sign for the renewal of any part reloaned by said institution; to receive and acknowledge notices of protest of, or to waive demands of protests, notices of protests, services of notice of protests on all or any bills of exchange, drafts or promissory notes and, finally, empowering the institution as aforesaid to receive said attorney's signature for us on all bills of exchange as drawer, indorser or acceptor, and on all promissory notes or other obligations as maker or indorser."

That in January, 1891, Vincenzo Scalzo, being then in New Orleans, while at the office of Cusimano Brothers, was asked to indorse a note for $15,000 of date of January 6, 1891, payable in six months to the order of Cusimano Brothers, and indorsed by them per their authorized attorney in fact, C. P. Adoue. This, Mr. Scalzo consented to do, and, after first reading the note, he thereupon indorsed in his own handwriting upon the back of the paper, his firm name of V. Scalzo, Son & Company. This was done for the accommodation of the firm of Cusimano Brothers, and to enable them to use it for the purpose of securing loans from the People's Bank, with which it was deposited January 27, 1891, by Cusimano Brothers.

The evidence shows that that firm at various times after the deposit of the note with the bank, gave to the bank notes maturing at different times, but all within the maturity of the $15,000 note. These notes were discounted by the bank holding the $15,000 note as security.

Prior to the maturity of the principal note, Scalzo being again in New Orleans, had a talk with Mr. Angelo Cusimano, who told him that they would probably not be able to meet this $15,000 note at its maturity, and Scalzo told him to pay what he could, and he, Scalzo, would tell Zammit to renew the balance for Cusimano Brothers, to attend to such renewal as might be necessary, and indorse on his behalf, as Zammit had his power of attorney.

On July 1, 1891, as stated by Mr. Landry, two notes of $5,000 each, given by Cusimano Brothers and discounted by the bank, and which were secured by the $15,000 note matured, and, as in a few days thereafter the $15,000 note would mature, and could not therefore be used to secure a renewal of the two $5,000 notes, they not being paid, it either had to be protested in

order to protect the bank against loss on the two $5,000 notes, or it had to be fixed in some other way by the parties liable thereon, to wit, Cusimano Brothers and Scalzo.

On July 5 Mr. Cusimano notified Mr. Zammit of the condition of affairs, and that the note would have to be renewed for $10,000. Zammit said he would telegraph Scalzo, and he did so as follows: "*Cusimano told me to-day note you indorsed due to-morrow. Wire me what to do in case he can't pay,*" and in answer thereto received, about 12 M., a wire saying, "Do the best you can." Later he went to the office of Cusimano Brothers, carrying the telegram, and, according Cusimano's testimony, said, "All right, Angelo," and then he and Angelo, at 3 o'clock, went to the bank, where Zammit called for the $15,000 note, and examined it and saw that it bore the indorsement of Scalzo. The president went back and looked at the power of attorney, and Mr. Zammit, believing, as he states, that he was doing the best he could for Scalzo, then indorsed the two notes in suit upon the surrender to him of the $15,000 note. Cusimano at first wanted a renewal for ninety days, but this the bank refused to grant, and then the notes in suit at sixty and seventy-five days were agreed upon, and the discount placed to the credit of Cusimano Brothers.

The power of attorney is as follows:

"Know all men by these presents, that we, V. Scalzo & Company, of New Orleans, La., do hereby appoint Philip Zammit true and lawful attorney for me, and in my name and behalf, to transact the following concerns in and with the People's Bank of New Orleans, viz.:

"To vote for me and in my name at all meetings of the stockholders of the said institution; to sell and transfer all or any shares of the capital stock of said

institution standing in my name, and receive and receipt for the dividends due and to become due thereon; to pledge or pawn all or any shares of the capital stock of any bank or banks or other corporate body or bodies standing in my name; to deposit money in the said institution, and draw checks in my name; to lodge promissory notes, bills of exchange and other obligations for collection; to withdraw the same at discretion; to borrow money and contract obligations with the said institution in my name, whether on promissory notes or obligations drawn by me, or by our said attorney in our name, or by other parties in our favor, or in favor of any person or persons, or on a pledge of the same, or of any other property; to secure the payment thereof, without limit to the amount; and from time to time sign for the renewal of any part reloaned by the said institution; to receive and acknowledge notices of protest of, or to waive demands, protests, notices of protests, services of notices of protests, on all or any bills of exchange, drafts or promissory notes; and, finally, empowering the institution, as aforesaid, to receive said attorney's signature for us on all bills of exchange, as drawer, indorser or acceptor, and on all promissory notes, or other obligations, as maker or indorser, hereby binding our heirs or assigns to all the acts of our said attorney touching the premises, as fully as were we personally present, or were the signature our own proper handwriting.

"In witness whereof, we have hereunto set our hand and seal. Done at New Orleans, this twenty-seventh day of March, 1890.

"Witness:                 V. SCALZO & Co.   (L. S.)

   "E. DUBIN,
   "JOS. H. LEGENDRE.        "AUTHUR McGUIRK,
                             "Notary Public".

Zammit testified in behalf of defendants in substance as follows:

Witness and Vincenzo Scalzo composed the firm of V. Scalzo & Company, of New Orleans; witness had no connection with the firm of V. Scalzo, Son & Company, of St. Louis. Had only the one power of attorney from V. Scalzo, and that was the one in evidence. Identified the indorsement of the name of V. Scalzo, Son & Company on the $15,000 note as having been written by V. Scalzo, and identified his own indorsement on the back of the notes in suit. Witness indorsed these notes because he understood that the $15,000 note was due that day, and he had no time to wire Scalzo and was pinned to the wall.

On July 5, Salvator Cusimano told witness that the note indorsed by Scalzo was due next day. Witness asked how it could be that Angelo had said the note was already paid. At the same time witness "wired to Scalzo that the Cusimano note was not paid and was due the next day." Next morning, about 8:30, he told Cusimano's clerk, who came to his office, that he had not heard from Scalzo, and would not sign any notes. About 1:30 Cusimano came to him and presented a note for $10,000 saying to indorse this; witness threw the note away on the floor; said how could he sign, when he had Scalzo's letters that the note was for $5,000; that then Cusimano raised a racket and said he would sue Scalzo for damages if the note was protested, and "that Scalzo would have to pay $15,000, but that if he (Zammit) signed the note he would pay $5,000." Zammit told Cusimano that he did not believe him, and proposed that they should go to the bank and see the note. Mr. Landry, the president, told him, in answer to his inquiry, that it was for $15,000. Witness examined it and saw Scalzo's signature. Witness on the way to

the bank told Cusimano that he was not authorized to sign the note, but would, if he got the original. That was how he got the $15,000 note. He would not sign unless it was given him for his protection. Cusimano wanted the new notes at ninety days, but the president refused, and, after looking at the power of attorney, agreed to take notes at sixty and seventy-five days, Cusimano telling Zammit that he was paying $5,000, but this was said before they reached the bank.

When he and Scalzo and Cusimano were together one time in New Orleans, Cusimano said to Scalzo, "Mr. Scalzo, that note of mine is going to come due and you might not be here, will you authorize Phllip to sign it for me in case it comes due?" Scalzo answered, "All right, I will tell Philip to do it." Scalzo told him, Zammit, to try and make it for one half, make Cusimano pay $2,500. Scalzo had also told witness in Florida to sign a $5,000 note for Cusimano. Scalzo always said to try and make the note for $2,500; never talked of a $15,000 note. When advised by Zammit that he had indorsed notes for him to the amount of $10,000 and had taken up the $15,000 note. Scalzo expressed great surprise and denounced the $15,000 note a forgery.

On cross-examination, Zammit said: The first he heard of the $15,000 was when Cusimano presented him the $10,000 note about half past 1, July 6; when Cusimano spoke to him on the fifth of July, saying the note was due, he did not mention any amount; witness knew on the day he indorsed the renewal notes, and before he went to the bank, that the note Scalzo had indorsed was for $15,000. Witness, when he telegraphed to V. Scalzo, Son & Company, St. Louis, to know what he should do about the note falling due next day, got an answer, "Do the best you can." He was asked:

"*Q.* Didn't Angelo tell you that the $5,000 note was paid? *A.* Yes, he had told me that previously.

"*Q.* Then, why didn't you ask him 'What other note do you want me to indorse?' *A.* I didn't ask him that.

"*Q.* Why didn't you? *A. I telegraphed to Scalzo to find out the truth whether the note was paid or not.*

"*Q.* Oh, no, this is what you telegraphed him: '*Cusimano told me to-day note you indorsed due to-morrow. Wire me what to do in case he can not pay it.*' Witness: "Yes, but then you refer to my letter where I wrote to Scalzo; I was always under the impression that note was paid because Cusimano told me so.

"*Q.* I am not asking about the letter? *A.* I can't answer the question unless I refer to something that can protect me in what I am saying.

"*Q.* Why didn't you telegraph that the note was not paid? *A.* Who?

"*Q.* Why didn't you telegraph Scalzo that the note was not paid? *A.* Well, I telegraphed to him that the note was due that day, and what should I do."

He also stated that he did not know where the telegram was which he received from Scalzo. Thought he had given it to Mr. Benedict in New Orleans.

At the close of the case the court refused a demurrer to the evidence. The court thereupon gave the following declarations of law requested by said defendants:

"The court declares the law to be that Zammit had no power or authority, under the power of attorney in evidence, to indorse the notes in suit, and bind by such indorsement V. Scalzo, or defendants as executors of his estate.

"If the court believes, under the evidence, that Zammit indorsed the note in suit, without express and special authority conferred upon him by V. Scalzo to

make such indorsements, as same were in fact made, and that said Scalzo never ratified or assented to said indorsements, then the court will find for the defendants.

"If the court believes under the evidence that the sole authority given Zammit by V. Scalzo was to renew a note of $5,000, and that the said Scalzo never authorized Zammit to renew a note of $15,000, or any portion thereof, and that said Scalzo never assented or ratified the indorsement of said Zammit of the notes in suit, or either of them, then the court will find for the defendants."

The case was thereupon submitted to the court, and on the sixteenth of January, 1893, the court rendered judgment against defendants, Scalzo and Fiorita, as executrix and executor, for the sum of $10,678.32, and ordered the same certified to the probate court. Within four days after said finding and judgment, and in due time, appellants filed their motion to set aside said finding and judgment, and for a new trial.

I. This record contains some interesting questions of commercial law and they have been presented with great clearness by counsel on each side of the controversy. The controlling point at issue is the authority of Philip Zammit to indorse the two notes in suit in behalf of Vincenzo Scalzo, the testator of defendants.

The defense is that nothing less than the "special and express" authority required by the code of Louisiana will validate these indorsements, and that the law of agency itself required plaintiff to ascertain and know the extent of the power conferred by Scalzo upon Zammit and that the words "per procuration" were an express intimation that Zammit was acting under a special and limited authority. Moreover, counsel for defendants insist that, excluding the written power of attorney, in evidence, there was no evidence showing

any express power in Zammit to indorse the name of Scalzo on the notes in suit.

Article 2997 of the Louisiana Revised Code, in force in the year 1891, duly authenticated, was offered in evidence, and provides as follows:

"Article 2997. Thus the power must be express and special, for the following purposes:

"To sell or to buy.

"To incumber or hypothecate.

"To accept or reject a succession.   *   *   *

"*To draw or indorse bills of exchange or promissory notes.*

"To compromise or refer a matter to arbitration.

"To make a transaction in matters of litigation; and in general, where things to be done are not merely acts of administration, or such as facilitate such acts."

This section of the code has been construed many times by the supreme court of Louisiana.

The circuit court of St. Louis, by an instruction at the close of the evidence, excluded the written power of attorney from V. Scalzo & Company, of New Orleans to Ph. Zammit, of date March 27, 1890. The propriety or impropriety of this ruling of the circuit court need not be passed upon, if there can be found sufficient evidence of express and special authority conferred upon Zammit by Vincenzo Scalzo, independent of that writing. It is nowhere contended that the statute law of Louisiana required this express authority to be in writing.

Upon this point the evidence for the plaintiff establishes very clearly that, in January, 1891, Vincenzo Scalzo, being in New Orleans, and at the office of Cusimano Brothers, was asked to indorse a note for $15,000, of date January 6, 1891, payable in six months to the order of Cusimano Brothers, and indorsed by them per C. P. Adoue, their authorized attorney in

fact.  Mr. Adoue testified distinctly that Vincenzo Scalzo read the note before indorsing it.  Subsequently, and before the notes in suit were executed or indorsed by Zammit, Zammit was notified this note for $15,000 was indorsed by V. Scalzo, and, unwilling to believe it, he went to the plaintiff bank and was shown the indorsement, and he testifies it was the genuine signature of Vincenzo Scalzo.  After the note for $15,000 was indorsed, and prior to its maturity, Scalzo was again in New Orleans, and at the office of Cusimano Brothers, in company with Philip Zammit, his partner, and Angelo Cusimano told him that Cusimano Brothers would not be able to meet this $15,000 note at its maturity, and Scalzo then and there, in the presence of Zammit, told Angelo Cusimano to pay what he could on the note and he would tell Zammit to renew the balance for them, to attend to such renewal as might be necessary and indorse on his behalf, as Zammit had his power of attorney.

Zammit, in his evidence for the defendants, confirms the fact of this interview, and his presence at it. He narrates it in this way:  "When I and Scalzo and Cusimano were together one time in New Orleans, Cusimano said to Scalzo, 'Mr. Scalzo, that note of mine is going to come due, and you might not be here; will you authorize Philip [Zammit] to sign for me in case it comes due?'  Scalzo answered, 'All right; I will tell Philip to do it.' "

So that there is a complete agreement that Scalzo had theretofore indorsed a note for Cusimano to plaintiff bank; that there was but one note of Cusimano indorsed by Scalzo outstanding at this time; that Cusimano notified Scalzo he would not be able to meet that note at maturity, and that Scalzo unequivocally promised to renew it by having Zammit indorse for him.

Up to this point there is no conflict, but here the

ways part. Zammit says Scalzo told him to renew a $5,000 note, and not a note for $15,000. Whereas Cusimano says he told him to renew the $15,000 note. But when Zammit was apprised of the amount of the note, he wired Scalzo, in St. Louis, in these words: "Cusimano told me to-day *note you indorsed*, due to-morrow. Wire me what to do in case he can not pay it." He did not name the amount of the note. Under these circumstances the circuit court found there was express and special authority to indorse the notes in suit. The court was amply justified in so finding.

There was positive evidence that Vincenzo Scalzo read over the $15,000 note before he indorsed it. Notwithstanding his claim that it was a forgery, it appears beyond controversy, and from his own witness and partner in business, that the indorsement of that note was his genuine signature, and his counsel admits that the bank had no notice of any forgery or the insertion of a larger amount than he had stipulated to be bound for. Knowing, then, that he had but one indorsement out for Cusimano Brothers, when notified, both orally in New Orleans, and by wire, he authorized Zammit to renew for him, and do the best he could.

Nor did Vincenzo Scalzo's subsequent conduct comport favorably with his claim of a forgery. He was at once notified by Zammit of what was done in his name, and he did not promply repudiate the action taken in his behalf but mildly requested Cusimano to take care of the renewed notes.

We have gone through the list of adjudications by the supreme court of Louisiana, and we find nothing in any of them that tends to hold such a positive special authorization as this insufficient. Indeed the decisions of that state in the construction of powers of attorney are in harmony with the common law rules upon this subject and such as are consonant with

reason under any system of jurisprudence. So that, tested by the law of the state in which the contract was executed and in which it was to be performed, we think Zammit had special and express power to endorse the notes in suit.

II.   When the certificates of protest were offered in evidence the defendants made the general objection that they were incompetent, irrelevant and immaterial. The contention here is that these certificates of protest were not sworn to and filed in the cause fifteen days before the trial as provided by section 4880 of the Revised Statutes, 1889, of this state. However, it is now conceded that they were - properly filed in the cause.   The want of. verification is all that remains of the objection.

The general objection of the incompetency of the evidence is sufficient only when the proposed testimony is inadmissible for any purpose.   If competent for any legitimate purpose in the case this indefinite objection will not avail. *Seligman v. Rogers*, 113 Mo. 642; *Margrave v. Ausmuss*, 51 Mo. 561; *Keim v. Union Railway, etc., Co.*, 90 Mo. 314.

The certificate of the notary being under seal was evidence of presentment, refusal and protest.   This was its probative effect by the law merchant.   2 Daniel on Negotiable Instruments [4 Ed.], sec. 960. By statute in Missouri it has been recognized as having the same import since 1845.   R. S. 1845, sec. 18, p. 176; 1 R. S. 1855, sec. 20, p. 298; 1 Wagner's Stats. (1872), sec. 20, p. 218; R. S. 1879, sec. 552; R. S. 1889, sec. 738.

These provisions have remained in the statute together with section 4880, which provides that when the certificate also recites notice of dishonor it is evidence of notice of dishonor when verified. *Bank v. Hatch*, 78 Mo. 13.

But in the absence of any specific objection that the certificates were not sworn to, they were properly received by the court, and they are not now open to the objection that they were not sworn to. *Shaler v. Van Wormer*, 33 Mo. 386.

They show that notices were sent with due diligence, postage prepaid, among others, to V. Scalzo & Company, St. Louis, Missouri; V. Scalzo & Company, South Lake Weir, Florida, and also to Ph. Zammit at the same place in Florida (V. Scalzo & Company doing business both in New Orleans and Florida), also to Zammit in New Orleans by delivery. Vincenzo Scalzo lived in St. Louis, Missouri, doing business there as a member of the firm of V. Scalzo, Son & Company. As already stated the proof established that Scalzo lived in St. Louis and the notice was mailed to V. Scalzo & Company to that city. No effort whatever was made to show that as a matter of fact Scalzo did not receive the notice. Counsel for defendants urge that as the certificate does not state that St. Louis was the residence of Scalzo there can be no inference that such was the fact.

The learned author of Daniel on Negotiable Instruments, in the fourth edition of his admirable work, section 962, says: "It can not be inferred from the mere fact of protest when it is admissible as evidence of the manner and service of notice, or of the facts stated respecting the giving of notice, that any step was regularly taken, or any fact existed, which is not certified to. * * * But," says he, "the supreme court of the United States, it seems, takes a different view, though this precise question was not before it. The question in the case before it arose upon a demurrer to evidence, the notary who made the certificate being examined as a witness, and testifying that he sent notice by mail addressed to the indorser at

Alexandria, *without any evidence* that that was his place of residence; and the court held that the jury would have been warranted to infer that the indorser's residence was in Alexandria.   In Virginia this case was recently cited with approval by the supreme court of appeals, and applied where there was no evidence but the notary's certificate that he mailed notice to the indorsers at Blacksburg, Virginia." Citing *Bank of U. S. v. Smith*, 11 Wheat, 171; *Linkous v. Hale*, 27 Gratt. 668.

In *Bank v. Smith, supra*, THOMPSON, Justice, said: "If the defendant's place of residence was Alexandria, it is not denied but that due and regular notice was given him."

In the case at bar, the residence of Vincenzo Scalzo was St. Louis.   This was shown beyond peradventure, and if it should be held that standing alone the certificate failed to make a *prima facie* case, yet when supplemented by the evidence that St. Louis, the place to which the notice was mailed, was his place of residence, we are of opinion, that it was sufficient to enable the court to find that Vincenzo Scalzo had notice of the dishonor.   See, also, *Slaughter v. Farland's Ex'r*, 31 Gratt. 134.

Prof. Parsons expresses the opinion that without the aid of a statute the certificate is evidence "not only of presentment, demand, and dishonor, *but of such notice* as it asserts to have been given."   2 Parsons on Notes and Bills, 498.   *Bank v. Gray*, 2 Hill, 231.

If the indorser or other party to the note "receives the notice in due season, or [it] can be properly inferred by the jury from the facts of the case that it was received, the mere manner of its transmission is wholly immaterial."   2 Daniel on Neg. Inst. [4 Ed.] sec. 1003.

It is not pretended in this case that there was any

firm or individual other than defendant's testator by the name of V. Scalzo & Company doing business in St. Louis at the time. It is further argued by counsel that the notice was insufficient because addressed to "V. Scalzo & Co.," because there was no such firm in St. Louis, but it seems to us that when it stands admitted that V. Scalzo lived in St. Louis, and the notice was addressed and mailed to V. Scalzo & Co., St. Louis, it would certainly, in the ordinary course, be delivered to V. Scalzo. It must be borne in mind that Vincenzo Scalzo elected to indorse the notes in suit by the name and style of V. Scalzo & Company, and as he was notified by the name he had then selected for himself, in this transaction, it was evidence from which the jury, or court, might find notice. Certainly in the absence of all negative proof that he did not receive the notice of protest, the jury would be justified in so doing. *Clarke v. Sharpe*, 3 M. & W. 166. We can not think under the circumstances a notice so addressed was misleading.

III. The remaining contention is that the petition does not state a cause of action in that it does not sufficiently aver a demand at the place of payment. Counsel rely upon *Faulkner v. Faulkner*, 73 Mo. 327.

In that case there was no averment in the description of the note or elsewhere of the place of payment, nor was there any allegation from which a demand, at the place of payment, could be reasonably inferred, and this court held it was bad. But in this case the place of payment is averred, and a failure to pay according to the tenor and effect of the note and an allegation of due demand of the makers.

At most, all that can be urged against the petition is that it was a defective statement of a good cause of action, and not an entire failure to state a cause of action. Without proof of a demand at the place of

payment it is not to be presumed that the court sitting as a jury would have given a verdict against the indorsers.

It does not follow that because a petition is defective, and subject to a general demurrer, that it would be insufficient to sustain a verdict. On the contrary, the well settled rule both at common law and under our code is, that, if a material matter be not expressly averred in the petition, but the same is necessarily implied from what is stated in the context, the defect is cured after verdict, the doctrine resting on the presumption that plaintiff proved on the trial the facts imperfectly alleged, the existence of which was essential to his recovery. *Rushton v. Aspinwall*, 1 Smith's Leading Cases [4 Am. Ed.], 649, notes 654, top page; 2 Tidd's Practice, 919; *Shaler v. Van Wormer*, 33 Mo. 366; *McDermott v. Claas*, 104 Mo. 14; *Bank v. Leyser*, 116 Mo. 61; Bliss on Code Pleading [3 Ed.], sec. 438; *Lynch v. Railroad*, 111 Mo. 604; R. S. Mo. 1889, sec. 2113, clauses 8 and 9.

The presumption indulged by the law was sustained in this case *by proof of the presentment and demand of payment at the place of payment designated, and a refusal.*

Finding no error, we affirm the judgment. BURGESS and SHERWOOD, JJ., concur.