STATE EX REL. JACOB HAITZ, Respondent, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

St. Louis Court of Appeals. Argued and Submitted December 5, 1919. Opinion Filed January 6, 1920.

1. **PLEADING**: Bonds of Notaries: Failure to Allege Reliance on False Certificate of Acknowledgment: Evidence: Waiver. In an action on the bond of a notary public, even though relator's petition failed to state, and his evidence failed to prove, that he relied on the false certificate of acknowledgment, which the notary affixed to the deed of trust, etc., being genuine, or that he was thereby induced to purchase the principal promissory note which the deed purported to secure, the question of the insufficiency of the pleadings and failure of proof was not raised in the trial court where no demurrer was interposed, and the objection to any testimony under the petition, first made when the trial had commenced, was general not specific.

2. ———: ———: ———: Demurrer Interposed at Close of Case Insufficient: Waiver. Furthermore, a demurrer inetrposed at the close of the case, in the shape of a request for an instruction or

declaration of law, that under the pleadings and evidence plaintiff was not entitled to recover against defendant surety, was not sufficient to raise any question as to the sufficiency of the petition in respect to its failure to allege that relator relied on the false certificate of acknowledgment which the notary affixed to the deed of trust, etc., the petition being sufficiently definite to allow all reasonable implications as to its intendment, the rule being that if a material allegation is not expressly averred ih the petition, but is necessarily implied from what is stated, the defect is cured by the verdict.

3.  **NOTARIES PUBLIC: Bonds of Notaries: False Certificate Gives. Right of Action on Bond: Damages.** Any party injured by the false certificate of a notary, or any violation of his official duty as a notary, has a right of action, but unless he proves actual damages to himself, he is entitled to nominal damages only.

4.  ————: ————: **Statute of Limitations: Liability on Bond of Notary Accrues on Delivery of False Certificate.** Where a notary public made a false certificate of acknowledgment to a deed of trust, placed it on record, took it back into his possession after record, retained it and the principal and interest notes in his possession until he extended and sold the principal note and new interest notes to relator, etc., no matter when the notary affixed the false certificate to the deed of trust, it did not become of any concern or in any way affect the relator until delivered to him along with the abstract of title, the insurance policy and the notes, and it was then that his cause of action accrued and the three years bar imposed by section 10181, Revised Statutes 1909, began to run, and it did not begin to run until that date.

5.  ————: ————: ————: **Liability of Surety Accrues When Principal Becomes Liable.** The liability of a surety on the bond of a notary public runs along with that of the principal, and when the cause of action accrued to relator as against the notary public, the principal in the bond, it accrued against his surety.

6.  ————: ————: ————: **Defrauded Party Not Required to Use Diligence Where Fraud is Unsuspected.** In an action on the bond of a notary public, where it appears from the affirmative evidence from which the trier of the fact could determine that the first knowledge that relator had of the fraud practised upon him and the falsity of the notary's certificate to the alleged deed of trust came to him within a few months before he instituted the suit, etc., *held* that under such conditions relator was not guilty of any lack of care or prudence or diligence in not instituting the action sooner than he did, he having relied upon the statements and acts and conduct of the notary when he turned over to him the certificate of title, the insurance policy and the notary's certificate, and the notes, and induced him to part with his money.

7. ———: ———: **Liability on Bond Not Affected by Purchase of Matured Principal Note.** In an action on the bond of a notary public, where the case does not turn upon the validity of the note, but rests upon the false certificate to the purported deed of trust, and that being the cause of action, the fact that relator purchased the principal note and deed of trust after the note, according to its terms, became payable, does not affect the liability of the notary and his surety.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Thos. C. Hennings,* Judge.

AFFIRMED.

*J. D. Johnson* for appellant.

(1) (a) Relator's petition failed to state, and his evidence failed to prove, a cause of action on the bond in suit, because there was neither an averment, nor evidence, of the essential fact, that relator relied on the false certificate of acknowledgment being genuine, which Crone affixed to the deed of trust in question, or that he was thereby induced to purchase the principal promissory note which said deed purported to secure. State ex rel. v. Webb, 177 Mo. App. 60, and cases cited, 65; State ex rel. v. Farmer, 201 S. W. 955. (b) This question of the insufficiency of the pleadings and the failure of proof was duly raised below, by this defendant's counsel offering the instruction for a nonsuit at the close of plaintiff's case and which was overruled by the trial court. State ex rel. v. Webb, supra; McDonald v. Class, 104 Mo. 14. (2) The admissions in the pleadings and the evidence in the case raised the presumption that Charles C. Crone forged the signatures of the purported makers to the deed of trust, to the notes it was given to secure, and the extension interest notes; that he also filed the deed of trust for record in the St. Louis Recorder's office, and thereafter retained possession of said notes and deed of trust until he negoti- the sale of the principal note and deed to relator on February 10, 1915. Lawson on Presumptive Evi., 662;

Sowders v. Railroad, 127 Mo. App. 124; Advertising
Co. v. Publishing Co., 146 Mo. App. 103.   (3) Crone
having retained possession of said forged principal note
and deed of trust with the false certificate of acknowl-
edgment attached, until he sold the note and deed of
trust to relator on February 10, 1915—such sale and
delivery, in effect as well as in fact, was an original or
new uttering or making of said note, deed of trust and
false certificate; and as Crone's term of office as notary
public had expired on July 6, 1913, his action in that
behalf was entirely personal and no cause of action
thereby accrued in relator's favor on Crone's notarial
bond.   (4) The making of said false certificate of ac-
knowledgment by Crone, as notary, to said deed of trust,
constituted a breach of his bond, either as of the date
of said certificate or the date on which the deed was
recorded, and started the three years' Statute of Limi-
tation running in favor of the surety on said bond.
Therefore, as the three years' limit had expired when
relator purchased said principal note and deed of trust,
all right of action on said bond had then become barred,
and no cause of action accrued thereon in relator's
favor.   Sec. 10181, R. S. 1909.   (5) The averment in
plaintiff's petition to the effect that relator first learned,
on or about June 1, 1915, that the Blackstuns did not
execute and acknowledge said deed of trust, was not
in the absence of any evidence on the point, sufficient to
avoid the bar or to suspend the running of the Statute
of Limitations on said bond.   Sec. 10181, R. S. 1909;
State ex rel v. Musick, 145 Mo. App. 37;   Shelby v.
Bragg, 135 Mo. 300;   Callan v. Callan, 175 Mo. 361.
(6)  Relator having purchased the principal note, and
deed of trust from Crone, after said note according to
its terms became payable—he took the same with full
notice of all the infirmities or equities which attached
to said note at that time, and therefore acquired no
right of action against appellant as surety on Crone's
official bond.  Chappell v. Allen, 38 Mo. 213;  McCorkle
v. Miller, 64 Mo. App. 156, and cases cited;  Chouteau v.

Allen, 70 Mo. 340; Bank v. Birsch, 154 Mo. App. 639; See, also, the following sections of Rev. Stat. of Mo. 1909: Secs. 9994, 10022, 10028 and 10029. (7) If it be held that a cause of action accrued in relator's favor on the bond when he purchased the principal note from Crone (which we do not concede), then appellant contends that under the averments of the petition and the undisputed facts in the case, the false certificate of acknowledgment to the deed of trust was not the proximate cause of relator's loss. Therefore, plaintiff, in that event, was not entitled to recover other than nominal damages on the bond. State ex rel. v. Boughton, 58 Mo. App. 155, 158; State ex rel. v. Plass, 58 Mo. App. 148, 152; State ex rel. v. Ogden, 187 Mo. App. 39; State ex rel. v. Packard, Mo. App. 201 S. W. 953; State ex rel. v. Farmer, Mo. App. 201 S. W. 955.

*T. J. Rowe* for respondent.

(1) (a) The rule is established in this State that, if material matter is not expressly averred, but is necessarily implied, the defect is cured by verdict. Buck v. Peoples R. Co., 46 Mo. App. 555. (b) If a material fact is not specifically stated in a petition, but can be supplied by reasonable intendment from other allegations, and, if the record moreover shows that the trial court could not have arrived at its conclusion without finding such fact, the defect is cured by the verdict. Bassett v. Western Union Telegraph Co., 48 Mo. App. 566. (c) "Where a petition is capable of being amended and the imperfectly pleaded cause is found sufficient to bar another action for the same cause, the petition will be held good after verdict." Courts are strongly inclined to take a defendant at his word when by answering to the merits and accepting the hazzard of a trial he impliedly asserts that his adversary has stated a good cause of action against him. State ex rel. v. Webb, 177 Mo. App. l. c. 64. (d) The gist of the pleaded cause is that the defendant, notary, made a false certificate and that his act in so doing

was approximate cause of plaintiff's injury. (2) A notary is required by law to perform his official acts with integrity, to give bond for the faithful performance of his official duties and this bond may be sued on by anyone who, relying upon the official act of the notary, has been injured thereby. State of Missouri at the relation of Jos. Mather, v. John Ogden et al., 187 Mo. App. 39. (3) Plaintiff's action is not barred by Section 10181, R. S. Mo. 1909. State ex rel. Hawkins, 103 Mo. App. 251; State ex rel. Musick, 145 Mo. App. 46; State ex rel. O'Malley v. Musick, 145, Mo. App. 33; Smith v. Blatchley, 198 Pa. 173, 53 L. R. A. 849; State ex rel. v. Parkard, 201 S. W. 955.

REYNOLDS, P. J.—Action against principal and surety on a bond given by the principal for the faithful discharge of his duties as a notary public. On September 4, 1915, plaintiff filed his petition against one Charles C. Crone and the American Surety Company, of New York, hereafter referred to as the Surety Company, in which it is alleged that Crone, under date of July 6, 1909, was duly commissioned as a notary public; that of date July 14, 1909, Crone with the defendant Surety Company, duly executed his bond to the State of Missouri for the faithful performance by Crone of the duties of the office of notary public, the bond duly approved by the clerk of the circuit court of the city of St. Louis on that date and conditioned as required by statute. It is charged that defendant Crone had been guilty of a breach of the bond and that he did not faithfully performed the duties of his office according to law, in this: That on January 18, 1912, as such notary public, he pretended to take the acknowledgment of one Christian W. Blackstun and Maggie Blackstun, his wife, to a certain deed of trust, dated January 15, 1912, recorded in the office of the Recorder of deeds, St. Louis, January 23, 1912, the deed of trust purporting to be signed and executed by Christian W. and Maggie Blackstun, whereby there was conveyed to one Herbkse-

mann, trustee, as party of the second part, a certain lot in the city of St. Louis described, which lot is alleged to have been of the reasonable value of $1500, the conveyance or deed of trust made to secure the payment of an indebtedness of $1200, evidenced by one negotiable promissory note for $1200, of even date with the deed of trust, payable 3 years from date, at the office of C. C. Crone, in St. Louis, and drawn to the order of James P. Wilton, party of the third part, with interest at the rate of 8 per cent. per annum to maturity, payable semiannually, and evidenced by six semiannual interest notes for $36 each, all of the notes purporting to be signed by Christian W. Blackstun and Maggie Blackstun, his wife. It is charged that neither Blackstun nor his wife executed or acknowledged the deed of trust or notes, but that Crone, as notary public, had recited in his certificate of acknowledgment to the deed of trust, that on January 18, 1912, Blackstun and his wife had personally appeared before him and executed the deed of trust and had acknowledged the same before him as their act and deed; that at the date named Blackstun and his wife were in Seattle, Washington and not in the city of St. Louis; that Wilton, named in the deed as party of the third part, indorsed without recourse the note for $1200. That on January 15, 1915, Crone caused an indorsement to be made on the back of the note for $1200 as follows:

"January 15, 1915. Payment of within note extended for three years from date, provided the six interest notes dated January 15, 1915, each for $36 executed by Christian W. Blackstum and payable to the order of Christ H. Obrock in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date and given for said extension be promptly paid when due."

That afterwards the six interest notes were indorsed without recourse by one Obrock and, on February 10, 1915, Crone sold and delivered to the relator, Jacob Haitz, the promissory note for $1200 and the six interest

notes and the deed of trust, which had been duly recorded, for the sum of $1205. That by reason of the fact that the acknowledgment certified as aforesaid by Crone, as notary public, was false, the deed of trust was valueless and the relator Haitz thereby lost the sum of $1205 and interest thereon from February 10, 1915; that thereby defendants became liable to pay to the State of Missouri, for the use of relator the sum of $1205, with interest at the rate of six per cent. per annum from February 10, 1915. It is further averred that the relator first learned, on or about June 1, 1915, that Christian W. Blackstun and Maggie Blackstun, his wife, did not execute and acknowledge the deed of trust of date January 15, 1912. Judgment was prayed for the penalty of the bond and for execution against defendants for the sum of $1205, with interest from February 10, 1915, at six per cent. per annum, and for costs.

Defendant Charles C. Crone appeared by attorney and filed his answer, denying generally the averments of the petition. The defendant Surety Company filed its answer, admitting its incorporation and authority to do business; that Crone was commissioned as a notary public, and that he and the defendant Surety Company executed the bond to the State of Missouri for the faithful performance by Crone of the duties of the office of notary public at the dates and in the manner in the petition alleged. Further answering, the Surety Company denies specifically all the other averments of the petition and denies the liability of the Surety Company. As a further defense the Surety Company states that Crone was appointed a notary public in and for the city of St. Louis, Missouri, for the term of four years, ending June 6, 1913, and that he, as principal, and the Surety Company, as surety, executed the bond for that term; that the indorsement alleged to have been made by Crone, of date January 15, 1915, purporting to extend the payment of the note purported to have been executed by Blackstun and his wife for

three years from January 15, 1915, and the alleged sale of the principal note and deed of trust and interest notes to the relator on February 10, 1915, all occurred without the knowledge or approval of this defendant Surety Company after the expiration of the term for which Crone was appointed notary public, and of the term for which the bond was executed; that the action of Crone in making the indorsement on the alleged note extending the same for three years from January 15, 1915, as alleged in the petition, and the sale by Crone to relator of the alleged note for $1200 and deed of trust, did not constitute a breach of the bond nor make the defendant Surety Company liable thereunder; that relator purchased and acquired the alleged note for $1200 and the alleged deed of trust securing the same after the principal note had matured and become payable according to its terms, and acquired and took the same subject to any and all defects therein or any equity or defense against the same in favor of the Surety Company as surety on the bond; that at the time the relator purchased and acquired the alleged note and deed of trust the term for which Crone had been appointed notary public and the term of his notarial bond had expired and all liability of the Surety Company in and under the bond had terminated. For another and further defense the Surety Company pleads the three-year Statute of Limitations prescribed by section 10, 181, Revised Statutes 1909, in bar of the action.

The reply was a general denial.

On a trial before the court a jury being waived, defendant Crone, although filing an answer, did not appear and the cause proceeded against the Surety Company and was submitted to the court on the evidence. Taking the cause under advisement, the court found for relator in the sum of $1205 principal and $138 interest, assessing damages in the total sum of $1343 and rendering judgment for the penalty of the bond, $5000, ordered execution to issue in the sum of

$1343. From this the Surety Company has duly appealed.

The cause being called for trial, the Surety Company objected to the introduction of any evidence on the ground that the petition did not state a cause of action in favor of plaintiff. This was overruled, defendant excepting. The bond sued on was introduced in evidence and is in the statutory form. The deed of trust referred to, dated July 15, 1912, purporting to be signed by Blackstun and his wife, was introduced in evidence. It was in the usual form of such instruments and of the tenor as alleged in the petition. To it was attached a certificate of knowledgment, signed by the defendant Crone, as notary public, with his notarial seal affixed, in which it is recited as follows:

"On this 18th day of January, 1912, before me personally appeared Christian W. Blackstun and Maggie Blacktun, his wife, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

"In testimony whereof, I have hereunto set my hand and affixed my official seal at my office in St. Louis, Missouri, the day and year above written. My term expires July 5, 1913."

Following this is the certificate and seal of the Recorder of the city of St. Louis, to the effect that the deed had been duly filed for record in his office, January 23, 1912.

Christian Blackstun, a witness for plaintiff, testified that he had returned to St. Louis from Seattle, Washington, about two months before the trial, which was on November 14, 1917; that on January 15, 1912, he and his wife were in Seattle and had been there continuously since December 19, 1911. Shown the deed of trust witness stated that he had not signed or acknowledged it at St. Louis before Crone on the date mentioned, that on that date he was in Seattle; that the signa-

tures to the deed, purporting to be those of himself and his wife were not their signatures; that his wife was with him in Seattle on that date; that she is now dead, having died May 20, 1913; that she did not sign the deed of trust and did not appear before Crone at St. Louis on January 18, 1912, and acknowledge the deed. Shown the notes involved, purporting to have been signed by him and his wife, he testified that neither he nor she had signed the notes; that they were in Seattle, Washington, on the date of the notes.

Relator Haitz, sworn, testified that he had known defendant Crone for 20 or 25 years; identified a check for $1205, dated February 10, 1915, drawn by him to the order of C. C. Crone, indorsed by Crone and paid by the bank on which it was drawn and which was introduced in evidence. He also testified that he bought the notes and deed of trust in question from Crone for the amount represented in this check, which had been duly paid; that Crone had also given him the notes and an insurance policy in favor of Blackstun and the certificate of title to the property from a title company, showing title in Blackstun, subject to the deed of trust here involved. That after the exposure of Crone, a Mr. Rudolph, the gentleman who was acting as trustee in settling up matters of Crone, told him that the deed was a forgery. On cross-examination relator testified that he knew Obrock, whose name is on the back of the interest notes; also knew Wilton, payee in the principal note, and knew that his name was signed on the back of that note. The transaction he had with Crone was on February 10, 1915, the date of the check. At the time he purchased these notes Crone delivered to him the deed of trust and the notes, the insurance policy on the property and the certificate of·title to the property. Relator testified that the propery described consisted of a story and a half frame and the lot, twenty-five foot front. The house had subsequently burned down during the year 1917. After the exposure of a number of Crone's transactions, relator testified he went to see Mr.

Rudolph about the deed. Mr. Rudolph said that he had the proper deed and that his (relator's) deed was a forgery, and that, said witness, was the first time he learned that the deed had been forged. After the building burned, relator went to the insurance agent, who declined to pay the policy on the ground that the deed of trust was a forgery. Witness was further asked, on cross-examination, on what date he went to see Mr. Rudolph. Witness said he made no notation of the date but it was just after the exposure of Mr. Crone's transactions; had heard Mr. Rudolph was the assignee and went to his office and saw him about it. He could not give the date exactly but it was in 1916. When reminded that the suit was filed in 1915, he said he had no distinct recollection of the date, but he had seen Mr. Rudolph and learned that the note was a forgery several months after he acquired the note but could not say how long; had not dealt with anybody except Crone in purchasing these securities; knew Wilton, the payee of the principal note and also Obrock, indorser of the interest notes; never had any dealing with them about the notes; knew that Wilton's name was signed on the back of the note; thought he was a kind of pensioner in Crone's office at one time, working for him and doing what Crone told him. After he got the papers from Crone, he took them to his home and kept them there until he brought them to his attorney.

Defendant introduced no testimony.

The interest notes, dated January 15, 1915, purporting to be signed by Blackstun and wife, payable to the order of Obrock were for the sum of $36, payable 6, 12, 18, 24, 30 and 36 months after date, each of them indorsed on the back, "Without recourse on me. Chris H. Obrock."

At the close of the introduction of testimony, the Surety Company asked the court to give a declaration of law in the nature of an instruction that under the pleadings and evidence plaintiff was not entitled to recover against the Surety Company. The court refused

to give this and entered a finding and judgment in favor of relator as before stated.

The first point made by learned counsel for appellant is, that the relator's petition failed to state, and his evidence failed to prove, a cause of action on the bond, because there was neither an averment, nor evidence, of the essential fact that relator relied on the false certificate of acknowledgment, which Crone affixed to the deed of trust in question, being genuine, or that he was thereby induced to purchase the principal promissory note which the deed purported to secure; and that the question of the insufficiency of the pleadings and the failure of proof was duly raised below, by defendant's counsel offering the instruction for a nonsuit at the close of plaintiff's case and which was overruled by the trial court. We think this proposition is disposed of adversely to the contention of learned counsel by the decision of our Supreme Court in Monmouth College v. Dockery, 241 Mo. 522, 145 S. W. 785. There, commencing at page 553, it is said:

"It is not always necessary for a plaintiff to aver in his pleading that he used diligence to discover the fraud, because if he had no reason to suspect fraud he was not called upon to investigate; the fraud may have been so concealed as not to arouse suspicion, in which event it would be sufficient to say that the defendand so concealed the fraud or so acted in relation to it as to allay apprehension. And the circumstances under which the fraud is perpetrated may be such that in its very concoction concealment is shown and suspicion averted, and so it was in this case, as the statements in the petition show."

It is further said in that case (l. c. 554):

"The circumstances stated show by natural inference that the fraud rested alone in the breast of the guilty member of the firm and was so hidden that no suspicion was aroused, therefore it is not correct to say that the plaintiff's pleading to avoid the Statute of Limitations states only the mere fact that the fraud

was not discovered until December, 1905. But in an action based on fraud and deceit, against which the Statute of Limitations is interposed, if the plaintiff merely states that he did not discover the fraud until a certain date, and the defendant, without questioning the sufficiency of the pleading, goes to trial on that issue, and evidence is heard tending to show that it was the conduct of the defendant that allayed suspicion, he cannot, on appeal, complain of the defect in the pleading. If at any time the sufficiency of the pleading in this particular had been questioned in the curcuit court and adjudged defective, the plaintiff could have amended. It is only when a pleading fails to state a cause of action or a defense, or fails to show jurisdiction in the court, that the defect can be complained of for the first time in the appellate court. There was no demurrer filed in this case, and no objection to the evidence on the specific ground of this alleged defect; the only objection to the plaintiff's petition in the circuit court was when the trial began defendant objected to any evidence because, he said, the petition did not state facts constituting a cause of action; there was no hint of any special defect. And when the trial came on and plaintiff offered evidence tending to show that the payments of interest for the first three years were promptly remitted in the firm name of D. &. H. there was no objection on the specific ground that it was not so pleaded. When a party withholds his objection to his adversary's pleading at a period in the progress of the case when, if the objection is held to be good, the other party may amend, he should not be heard to make it when that period is passed, unless it is a vital point. Objection to a petition which comes after answer filed and just as the trial is about to begin, and which comes then only in the form of an objection to the introduction of any evidence, is not entitled to as favorable consideration as a general demurrer timely interposed. In such case if by reasonable inference

from the facts stated a cause of action can be constructed it will be the duty of the court to do so'' (citing cases).

That is about the situation here. No demurrer was interposed, and the objection to any testimony, under the petition, first made when the trial had commenced, was general not specific. We do not think that the demurrer interposed at the close of the case, in the shape of the request for an instruction or declaration of law, that under the pleadings and evidence plaintiff was not entitled to recovery against the defendant American Surety Company of New York, was sufficient to raise any question as to the sufficiency of the petition in this respect. The demurrer was as general as the objection. However defective that petition may have been in its averments, it was sufficiently definite to allow all reasonable implications as to its intendment, it being the rule that if a material allegation is not expressly averred in the petition, but is necessarily implied from what is stated, the defect is cured by the verdict. [People's Bank of New Orleans v. Scalzo, 127 Mo. 164, 29 S. W. 1032.]

The second point made by learned counsel for appellant is that the admissions in the pleadings and the evidence raised the presumption that Crone forged the signatures of the purported makers to the deed of trust, to the notes it was given to secure, and to the extension notes; that he also filed the deed of trust for record in the Recorder's office, and thereafter retained possession of the notes and deed of trust until he negotiated the sales of the principal note and deed of trust to relator on February 10, 1915. Grant that; but we do not see that it helps the appellant in making out its defense. In point of fact the evidence in the case shows more than a mere presumption; it is positive to the effect that Crone, after his certificate of acknowledgment had been affixed to the deed of trust, placed it on record, took it back into his possession after record, retained it and the principal and interest notes in his

possession until he extended and sold the principal note and the new interest notes to the relator. These notes had been indorsed in blank and Crone was the holder and putative owner of them and these are the instruments which the relator purchased, paying for them $1205.

The third point made by learned counsel is that Crone having retained possession of the forged principal note and deed of trust with the false certificate of acknowledgment attached, until he sold the note and deed of trust to the relator on February 10, 1915, that such sale and delivery, in effect as well as in fact, was an original or new uttering or making of the notes, deed of trust and false certificate; and as Crone's term of office as notary public had expired on July 6, 1913, his action in that behalf was entirely personal and no cause of action thereby accrued in relator's favor on Crone's notarial bond.

The fourth point is that the making of the false certificate of acknowledgment by Crone, as notary, to the deed of trust, constituted a breach of his bond, either of the date of the certificate or the date on which the deed was recorded, and started the three-years Statute of Limitations running in favor of the surety on the bond, hence it is argued that the three-years limitation prescribed by section 10, 181, Revised Statutes 1909, had expired when relator purchased the principal note and deed of trust and all right of action on the bond had then become barred, and no cause of action accrued thereon in relator's favor. We will consider these two points together.

Section 10181, Revised Statutes 1909, which appears in the chapter relating to notaries public, after providing for the taking of the oath of office by a notary and the giving of bond (in the city of St. Louis in the amount of $5000), enacts:

"Said bond after having been so recorded, shall be filed in the office of the Secretary of State, and may be sued on by any person injured; but no suit shall

be instituted against any such notary or his sureties more than three years after such cause of action accrued.''

It is settled law in this State that any party injured by the false certificate of a notary, or any violation of his official duty as a notary, has a right of action, but unless he proves actual damage to himself he is entitled to nominal damages only. [State ex rel. Matter v. Ogden and American Surety Company of New York, 187 Mo. App. 39, 172 S. W. 1172; State ex rel. Scruggs v. Packard, 199 Mo. App. 53, 201 S. W. 953; State ex rel. and to Use of Dominick et al. v. Farmer et al., not officially reported but see 201 S. W. 955.] Until Crone delivered to relator the deed of trust and note, which purported to be secured by the deed of trust, and which latter purported to have been duly acknowledged by the purported makers, relator was not concerned in the transaction in any way whatever, and it was then that his cause of action accrued. He commenced this action on September 4, 1915. He bought the notes purporting to be secured by the deed of trust, on February 10, 1915, and he testified that between that date and the date of bringing this action, he discovered that the notes were a forgery and the acknowledgment to the deed of trust false. The matter of the liability of a notary is very fully discussed by Judge TRIMBLE, speaking for the Kansas City Court of Appeals in State ex rel. Matter v. Ogden and American Surety Company of New York, supra. We refer to that without repeating it. We discussed it in State ex rel. Saving Trust Co. v. Hallen et al., 165 Mo. App. 422, 146 S. W. 1171.

The cause of action referred to in section 10, 181, supra, did not accrue to this relator until the delivery to him, on February 10, 1915, of the forged note purporting to be secured by a deed of trust whose validity depended upon the truth of the certificate of Crone as notary public, that it had been duly signed and acknowledged before him by the purported makers, and

then the false certificate was first used as to him. This is not a case, as in some of those referred to heretofore, of a fictitious person, but in the case at bar, the purported makers of the deed of trust and of the notes were shown by the abstract of title furnished relator by Crone to be the actual owners of the property; and no matter when Crone affixed this false certificate to the deed of trust, it did not become of any concern, or in any way affect the relator until Crone delivered it to him along with the abstract of title, the insurance policy and the notes, and it was then that his cause of action accrued and the three-years bar imposed by section 10, 181, had not run out when he brought this action.

The liability of the surety ran along with that of the principal; until the principal became liable there was none on the part of the surety. So that here, when the cause of action accrued to relator as against Crone, the principal in the bond, it accrued against appellant, his surety.

The fifth point relied on by learned counsel for appellant is that the averment in plaintiff's petition, to the effect that relator first learned, on or about June 1, 1915, that the Blackstuns did not execute and acknowledge the deed of trust, was not, in the absence of any evidence on the point, sufficient to avoid the bar or to suspend the running of the Statute of Limitations. We cannot agree to this because there is affirmative evidence from which the trier of the fact could determine that the first knowledge that the relator had of the fraud practiced upon him and of the falsity of Crone's certificate to the alleged deed of trust came to him within a few months before he instituted this action.

Even if the limitation in this case is to depend upon the date of the purported and false certificate to it, it is very apparent that the relator here was guilty of no lack of care or prudence or diligence in not instituting the action sooner than he did, for the very sufficient reason, in the first place, that he was not injured until when, on February 10, 1915, he pur-

chased the note; and for the further reason that until Crone had been exposed for fraud in his business transactions, there was nothing whatever to put relator on inquiry. It is a clear inference from the testimony in the case that he relied upon the statements and acts and conduct of Crone, when, on February 10, 1915, he turned over to him the certificate of title, insurance policy and notary's certificate, and the notes, and induced him to part with his money.

Our Supreme Court, in Laird v. Keithley, 201 S. W. 1136, not yet officially reported, has said (l. c. 1142):

"Under those conditions the law is well settled that the defrauded party is under no legal obligation to investigate the honesty of the transaction, but may rely upon the representations of the vendor to be true, and the latter will not be permitted to shield his fraud behind the alleged negligence of the vendee, when such negligence, if any, was caused by the former's misconduct, as the evidence in this case tended to show."

While different in its facts from the case at bar, the principle there announced is applicable here.

Another point urged by learned counsel for appellant is that the relator having purchased the principal note and deed of trust after the note, according to its terms, became payable, he took it with full notice of all the infirmities or equities attached to the note at that time and therefore acquired no right of action against the appellant on Crone's official bond. We are entirely unable to appreciate the force of this point. This case does not turn upon the validity of the note. It rests upon the false certificate to the purported deed of trust; that is the cause of action; and that the relator paid out his money on the faith of the validity of that acknowledgment is beyond question. The original note, it is true, was of date January 15, 1912, and so were the semi-annual interest notes. They matured January 15, 1915, and on that date the indorsement heretofore set out was made upon the principal note, extending

it for three years; the original interest notes were paid or at least taken up, and new ones substituted on January 15, 1915, for the interest thereafter to accrue. It was these notes that relator bought and for which he paid $1205. He did that on February 10, 1915, and undoubtedly he did that and paid out his money on the faith of the notes being secured by the deed of trust to which Crone had affixed his false certificate. There was evidence in the case furnished by Crone himself in the shape of an abstract showing title in the purported makers of the deed of trust, subject only to this deed of trust, and undoubtedly it was on the faith of this that the relator paid out his money.

The case of the State ex rel. Saving Bank Trust Co. v. Hallen et al., supra, came before us again under the same title, as see 196 S. W. 1067. We there said (l. c. 1069), after noting that counsel claimed that the damages to plaintiff did not result from any act of the notary but from the act of the husband in negotiating the note:

"In other words, without the concurring negligence on the part of the notary the spurious deed of trust could not have been palmed off as having been duly executed and acknowledged by the actual owner of the property. Whatever other acts may have contributed to cause the damages sustained by relator in the instant case, we hold that the negligence of the notary directly contributed thereto."

That renders not only him but his surety, the American Surety Company of New York, liable on his notarial bond. So the learned trial court found and we see no error in that finding.

The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur, the latter in the result.